FROZEN FOOD EXPRESS *v.* UNITED STATES ET AL.

NO. 158.

Argued March 7, 1956.—Decided April 23, 1956.

*Carl L. Phinney* argued the cause and filed a brief for Frozen Food Express, appellant in No. 158 and appellee in Nos. 159, 160 and 161.

*Robert W. Ginnane* argued the cause for the Interstate Commerce Commission, appellant in No. 159 and appellee in No. 158. With him on the brief was *Leo H. Pou.*

*David G. Macdonald* argued the cause for the American Trucking Associations, Inc., et al., appellants in No. 160. With him on the brief were *Francis W. McInerny, Peter T. Beardsley, Clarence D. Todd* and *Dale C. Dillon.*

*Charles P. Reynolds* and *Carl Helmetag, Jr.* submitted on brief for the Akron, Canton & Youngstown Railroad Co. et al., appellants in No. 161.

Mr. Justice Douglas delivered the opinion of the Court.

Part II of the Interstate Commerce Act, 49 Stat. 543, as amended, 49 U. S. C. § 301 *et seq.*, grants the Commission pervasive control over motor carriers. Common carriers and contract carriers by motor vehicle, subject to that part of the Act, must have a certificate of public convenience and necessity or a permit issued by the Commission. §§ 206 (a), 209 (a). The Commission has powers of investigation to determine if a motor carrier has complied with the Act; and it has authority to issue an order compelling compliance. § 204 (c). These requirements for a certificate or permit* are not, however, applicable to "motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation." § 203 (b)(6).

The controversy in these cases centers around this "agricultural" exemption. After an investigation instituted on its own motion, the Commission issued an order that specified commodities are not "agricultural" within the meaning of § 203 (b)(6).

The hearing to determine the meaning and application of the term "agricultural . . . commodities (not including manufactured products thereof)" as used in § 203 (b)(6) was held before an examiner. It was a public hearing at which various governmental officials and agencies and

---

*Exempted carriers are also not subject to the provisions concerning rates and charges, §§ 217, 218, nor to the requirements concerning bodily injury and property damage insurance. § 215.

various producers, shippers, and carriers appeared and presented evidence. The Commission's decision was in the form of a report and order. 52 M. C. C. 511. The report, which concerns various groups of commodities, covers 71 pages of the printed record. The findings list those commodities that the Commission finds are exempted under § 203 (b)(6) and those that are not. The order of the Commission incorporates the "findings" and states that the proceeding "be, and it is hereby discontinued."

Frozen Food Express, the plaintiff, is a motor carrier transporting numerous commodities which the Commission ruled were nonexempt under § 203 (b)(6) but which the carrier claims are "agricultural commodities." Plaintiff, who was not a party to the administrative proceeding, instituted suit before a three-judge District Court (28 U. S. C. § 2325) to enjoin the order of the Commission and have it set aside, naming the United States and the Commission as defendants. 28 U. S. C. § 1336; 49 Stat. 550, as amended, 49 U. S. C. § 305 (g); 60 Stat. 243, 5 U. S. C. § 1009. The complaint alleged that plaintiff is a common carrier by motor vehicle, holding a certificate of public convenience and necessity which authorizes it to transport certain commodities between designated points and places; that plaintiff is transporting, in addition to those commodities, commodities which are exempt under § 203 (b)(6) and for which plaintiff has sought no authority from the Commission; that the Commission in its order has held the latter commodities nonexempt and accordingly has deprived it of the right granted by the statute; that the order of the Commission classifying certain commodities as nonexempt is unlawful; and that the Commission threatens to enjoin transportation of the commodities which plaintiff claims are exempt. The Secretary of Agriculture intervened, supporting plaintiff's position on some of the commodities. Other interveners

are trucking associations and railroads which support the Commission. The United States as a defendant supports the Commission on some of its findings and opposes it on others.

The District Court, being of the view that the case was controlled by *United States* v. *Los Angeles R. Co.*, 273 U. S. 299, dismissed the action, saying that the "order" of the Commission was not subject to judicial review. 128 F. Supp. 374. The cases are here by appeal. 28 U. S. C. §§ 1253, 2101 (b).

We disagree with the District Court. We do not think *United States* v. *Los Angeles R. Co.*, *supra,* is controlling here. In that case the "order" held nonreviewable was a valuation of a carrier's property made by the Commission. The Court held that the "order" was no more than a report of an investigation which might never be the basis of a proceeding before the Commission or a court. Mr. Justice Brandeis, speaking for the Court, said:

> "The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation. . . ." 273 U. S. 309–310.

The situation here is quite different. The determination by the Commission that a commodity is not an

exempt agricultural product has an immediate and practical impact on carriers who are transporting the commodities, and on shippers as well. The "order" of the Commission warns every carrier, who does not have authority from the Commission to transport those commodities, that it does so at the risk of incurring criminal penalties. § 222 (a). Where unauthorized operations occur, the Commission may proceed administratively and issue a cease and desist order. § 204 (c). Such orders of the Commission are enforceable by the courts. § 222 (b). And wilful violation of a cease and desist order is ground for revocation of a certificate or permit. § 212. The determination made by the Commission is not therefore abstract, theoretical, or academic. Cf. *El Dorado Oil Works* v. *United States,* 328 U. S. 12, 18–19. The "order" of the Commission which classifies commodities as exempt or nonexempt is, indeed, the basis for carriers in ordering and arranging their affairs. Cf. *Rochester Tel. Corp.* v. *United States,* 307 U. S. 125, 132. Carriers who are without the appropriate certificate or permit, because they believe they carry exempt commodities, run civil and criminal risks. A carrier authorized to carry specified commodities and dependent on exempt articles for its return load may lose its right to operate at all, if it does not respect the Commission's "order." Carriers and shippers alike are told that they are or are not free to bargain for rates, that they must or must not pay the filed charges. The "order" of the Commission is in substance a "declaratory" one, see 60 Stat. 240, 5 U. S. C. § 1004 (d), which touches vital interests of carriers and shippers alike and sets the standard for shaping the manner in which an important segment of the trucking business will be done. Cf. *Columbia Broadcasting System* v. *United States,* 316 U. S. 407. The consequences we have summarized are not conjectural. The Commission itself places this interpretation on its action and argues, contrary to its

position in the *Los Angeles Case, supra,* for finality of the order. We conclude that the issues raised in the complaint are justiciable and that the District Court should adjudicate the merits.

*Reversed.*

Mr. Justice Harlan, dissenting.

I do not agree that the District Court had jurisdiction to entertain this action to set aside the Commission's "order." It seems to me that the case falls squarely within those carefully developed rules which require that judicial intervention be withheld until administrative action has reached its complete development. I find nothing in the nature of the order which commends it to reviewability at this stage other than the fact that its promulgation was preceded by a lengthy investigation and that it contains a series of "findings" and "conclusions." These factors should not be permitted to obscure the true character of the order.

After a self-initiated investigation, in which various carriers participated, the Commission entered this order discontinuing the proceedings and incorporating the "findings of fact and conclusions" of the Commission. That the order was not intended to be a "legislative" regulation seems apparent, since it was not put in the form ordinarily used by the Commission in promulgating regulations. The order simply lists the commodities considered by the Commission and determines whether they are within the § 203 (b) (6) exemption; it nowhere commands that carriers hauling commodities considered non-exempt comply either with the order or with the general requirements of the Interstate Commerce Act. It is clear, therefore, that no administrative or criminal proceeding can be brought for violation of the order itself. And it is equally clear that the proceeding did not conclude any rights as between any specific carriers and the Commission.

The Interstate Commerce Act does, of course, provide for administrative and criminal sanctions to enforce compliance with its provisions.   An uncertificated carrier hauling commodities non-exempt under § 203 (b) (6) runs the risk of a criminal prosecution under § 222 (a) of the Act.   But the order has no operative effect in such a proceeding—it does not extend the carrier's criminal liability, which exists because of a violation of the Act and not the order.   And if the enforcement takes the form of a cease and desist proceeding against a particular carrier, again the only question would be whether the Act, rather than the order, was being violated.   If such an administrative proceeding is instituted, and a cease and desist order is issued, the carrier subject to that order would be entitled to contest the statutory authority of the Commission in judicial proceedings of precisely the scope brought here.

Nor can this order be likened to a determination of status, held reviewable in *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125.   As I understand that case, the touchstone of the decision was that the determination "necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority."   307 U. S., at p. 144.   The specific determination that a particular carrier must comply with Commission regulations is quite different from this order, which is directed to no one in particular and is binding on no one, not even the Commission.   Neither can this order be analogized to a declaratory order directed to the status of a particular carrier, which might be reviewable as carrying with it a direct threat of prosecution— see *Rochester Telephone Corp.* v. *United States, supra,* at p. 132, n. 11.   Indeed, the Commission itself does not consider its determinations the final answer to the meaning of the § 203 (b) (6) exemption, even for administra-

tive purposes. This is evident from the proceedings in *East Texas Motor Freight Lines* v. *Frozen Food Express, post,* p. 49, where in a cease and desist proceeding the Commission heard new evidence on whether the particular commodities there involved were within the exemption, and was evidently ready to reconsider the determinations embodied in the order involved here.

To be sure, the order does serve as a warning to carriers that the Commission interprets the Act in a particular way, and it is true that courts will give the Commission's views some indeterminate weight in construing the statute. But that very fact, instead of justifying a holding of reviewability, seems to me a strong argument against it. The Commission's willingness, in individual cases, to reconsider its determinations with respect to particular commodities points up the tentative nature of the conclusions here sought to be reviewed. When this action is heard on the merits, the District Court will have as an aid in construing the statute administrative interpretations which are admittedly inconclusive, and if they are to be given any weight it would seem important that this Court not do anything to freeze them in their present immature state. For all we know, the Commission's decision not to issue this order in the form of regulations may have been because it recognized the need for further study.

Years of experience have shown that § 203 (b)(6) presents difficult problems of interpretation, and this Court should be wary of establishing a procedure which would prematurely throw into the courts questions of statutory construction not arising in the context of concrete facts, and which does not bring to the courts even the benefit of final interpretation by the agency assigned to administer the statute. That this should be done in a case where there is a right of direct appeal to this Court makes the wisdom of today's decision even more questionable.

Lastly, the order does not have the immediate impact of the sort which, at times, has led this Court to regard particular administrative action as ripe for judicial review. In *Columbia Broadcasting System* v. *United States,* 316 U. S. 407, the very existence of the regulations had, without anything more, an immediate effect on the business of the party attacking them. There is much to be said for finding administrative action reviewable when it entails immediate practical consequences for those affected by it. Cf. *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U. S. 123. But the carriers subject to the Interstate Commerce Act are in no way worse off now than they were before this order issued; there is no greater liability or risk under the statute occasioned by the order, which has no more effect than would any other informal expression of views by the Commission. If anything, carriers are in a better position, since they can now make a more reasoned judgment as to the applicability of the statute to particular commodities, and this may have been the principal reason for the Commission making public its findings.

In my view, then, the language quoted by the majority from *United States* v. *Los Angeles R. Co.* aptly describes this order of the Commission, and I consider that wise decision controlling here. Neither the character nor the meaning of this order can be changed by the fact that the Commission, in asking us to hold it reviewable, calls it a "formal determination" of the scope of § 203 (b)(6). The significant fact is that, as shown by *East Texas Motor Freight Lines* v. *Frozen Food Express, post,* p. 49, the Commission itself does not consider its order definitive. Today's decision opens the door wide to premature judicial review of various kinds of administrative action, and I must withhold my assent from it. I would affirm the decision below.