714

NORTH WESTERN–HANNA FUEL CO., Berwind Fuel Company, Carnegie Dock and Fuel Company, Inland Coal & Dock Company, Division of the North American Coal & Dock Company, Plaintiffs,
and
Diamond Match Company, Intervening Plaintiff,

v.

UNITED STATES of America, Interstate Commerce Commission,
and
Railroad and Warehouse Commission of the State of Minnesota, Defendants,
and
Canadian National Railway Company, Chicago and North Western Railway Company, Chicago, Burlington & Quincy Railroad Company, Chicago Great Western Railway Company, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Chicago, Rock Island and Pacific Railroad Company, Chicago, St. Paul, Minneapolis and Omaha Railway Company, Duluth & Northeastern Railroad Company, Duluth, Missabe and Iron Range Railway Company, Duluth, Winnipeg and Pacific Railway Company, Great Northern Railway Company, Illinois Central Railroad Company, Minneapolis & St. Louis Railway Company, Minneapolis, Anoka and Cuyuna Range Railroad Company, Minneapolis, Northfield and Southern Railway, Minneapolis, St. Paul and Sault Ste. Marie Railroad Company, Minnesota, Dakota & Western Railway Company, Minnesota Western Railway Company, Northern Pacific Railway Company, Intervening Defendants.

Civ. A. No. 5815.

United States District Court
D. Minnesota,
Fourth Division.
Dec. 26, 1957.

Judgment affirmed. See 78 S.Ct. 993.

Louise A. Herou, Minneapolis, Minn. (Larson, Loevinger, Lindquist, Freeman & Fraser, Minneapolis, Minn., of counsel), for intervening plaintiff.

Victor R. Hansen, Asst. Atty. Gen., and James E. Kilday and Robert S. Burk, Attys., Department of Justice, Washington, D. C., and George E. MacKinnon, U. S. Atty., St. Paul, Minn., for the United States.

Robert W. Ginnane, Gen. Counsel, and Samuel R. Howell, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

G. F. Bennet, L. C. Corcoran, Ross L. Thorfinnson and Charles H. Clay, Minneapolis, Minn., F. B. Stevens, Duluth, Minn., and Warren H. Ploeger, Frank S. Farrell, L. E. Torinus and Curtis H. Berg, St. Paul, Minn., for intervening defendants.

Before SANBORN, Circuit Judge, and NORDBYE and BELL, District Judges.

PER CURIAM.

This is an action to enjoin compliance with a determination of the Interstate Commerce Commission (hereafter called the Commission) made on April 23, 1957, in Docket No. 31798, entitled *Minnesota Intrastate Freight Rates and Charges,* together with an order of the Minnesota Railroad and Warehouse Commission entered May 20, 1957, in its Docket No. A-7138-3, which gave effect to the Commission's determination. The jurisdiction of this Court is based upon Sections 1336 and 2321-2325 of Title 28 United States Code.

The plaintiffs are corporations engaged in the operation of coal docks at Duluth, Minnesota, and in the gathering and distribution of bituminous coal, more than one million tons of which are shipped annually from those docks by rail to points in Minnesota.

The Diamond Match Company, intervening plaintiff, operates a plant at Cloquet, Minnesota, and is engaged in making and selling clothes pins and matches, made from forest products shipped to it

Leonard E. Lindquist, Minneapolis, Minn., and John F. Donelan, Washington, D. C. (Larson, Loevinger, Lindquist, Freeman & Fraser, Minneapolis, Minn., of counsel), for plaintiffs.

from Minnesota points, and classified for tariff purposes as short logs or wood bolts.

It is only the intrastate rates on bituminous coal, short logs, and wood bolts which are involved in this action.

The effect of the Commission's determination and the order of the Minnesota Commission, which is challenged by the plaintiffs, including the Diamond Match Company, is to require the railroads operating in Minnesota to apply to the Minnesota intrastate freight rates and charges on certain commodities, including bituminous coal, wood bolts, and short logs, "the same respective increases as are, and for the future may be, maintained by respondents [railroads] on like interstate traffic between points in Minnesota and adjoining States under our [the Commission's] authorization in Ex Parte No. 175" (Increased Freight Rates 1951, 280 I.C.C. 179, 281 I.C.C. 557, 284 I.C.C. 589, 289 I.C.C. 395, and 297 I.C.C. 17).

In Ex Parte 175, Increased Freight Rates 1951, the Class I railroads of the United States asked for over-all increases in interstate freight rates. Hearings were held by the Commission throughout the United States and evidence taken, on the basis of which the Commission granted general increases in interstate rates upon finding that the railroads needed added revenue to enable them to meet increased operating expenses.

In determining what the rate increases should be to provide the additional revenue needed, the Commission assumed that intrastate rates would be increased to the same extent as interstate rates. Because of the relation of intrastate rates to the needed revenue, the Commission invited the cooperation of state regulatory bodies. A committee appointed by the National Association of Railroad and Utilities Commissioners sat with the Commission and concurred generally in its report. (Page 441 of 289 I.C.C.)

The Class I railroads operating in Minnesota asked for authority from the Minnesota Commission to apply increases in their intrastate rates and charges corresponding to those applicable on interstate shipments. The Minnesota Commission authorized most of the increases applied for, but excepted those on certain commodities, including bituminous coal, wood bolts, and short logs, the intrastate rates on which were determined by it to be adequate. The Minnesota Commission was also of the opinion that to increase the rates on these commodities would result in the diversion of traffic in those commodities from the railroads.

The railroads on May 9, 1955, filed a petition with the Commission asserting that the Minnesota Commission had refused to permit increases in intrastate rates with respect to the commodities excepted by that Commission from the intrastate rate increase allowed; that the rates the railroads were required to maintain intrastate for such commodities were causing and would cause undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce, on the one hand, and on interstate commerce, on the other hand, and undue, unreasonable and unjust discrimination against interstate commerce, in violation of Section 13 of the Interstate Commerce Act (49 U.S. C.A. § 13).

The railroads also alleged, in substance, in their petition that to the extent of the denial by the Minnesota Commission of their request for authority to increase intrastate rates they were deprived of revenue to which they were lawfully entitled and which the Commission had determined it was necessary for them to have in order to furnish the adequate and efficient transportation service contemplated by Section 15a(2) of the Act (49 U.S.C.A. § 15a(2)).[1]

1. "(2) In the exercise of its power to prescribe just and reasonable rates the Commission shall give due consideration, among other factors, to the effect of rates on the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient railway transportation service at the lowest cost consistent with the furnishing

Upon the filing of the petition, the Commission, under Section 13(3) and (4) of the Act (49 U.S.C.A. § 13(3) and (4)), instituted an investigation concerning the lawfulness of the Minnesota intrastate freight rates and charges with respect to the commodities excepted by the Minnesota Commission. The railroads were made respondents in the proceeding. The State of Minnesota, the Minnesota Commission, and others interested, including the plaintiffs in this action, intervened in opposition to the railroads' petition.

The matter was assigned for hearing before an Examiner of the Commission and was heard in St. Paul, Minnesota, in January of 1956. The Examiner issued his report, to which exceptions were filed, and with respect to which briefs were submitted and oral arguments presented before the entire Commission. In its report and decision of April 23, 1957, the Commission made the following ultimate findings and conclusions:

"1. The transportation conditions incident to the intrastate transportation of freight in Minnesota are not more favorable than those between Minnesota and interstate points.

"2. The amounts and percentages by which interstate freight rates and charges between points in Minnesota and points in other States were authorized to be increased in Ex Parte No. 175 are just and reasonable.

"3. The present Minnesota intrastate rates and charges on anthracite, bituminous coal, coke, crushed rock, agricultural limestone, forest products (pulpwood, wood bolts, short logs, and jack pine and aspen timber), and sugar beets are abnormally low and are not contributing their fair share of the revenues required by the respondents to enable them to render adequate and efficient railway transportation service at the

lowest cost consistent with the furnishing of such service, thus accomplishing the purposes of the act, as set forth in the national transportation policy declared by the Congress, that the burden thus cast upon the interstate commerce is undue in and to the extent that these intrastate rates and charges are less than they would be if augmented by the increases authorized generally on the same commodities in Ex Parte No. 175, and that these intrastate rates and charges cause, and for the future will cause, undue, unreasonable, and unjust discrimination against interstate commerce.

"4. The undue, unreasonable, and unjust discrimination herein found to exist should be removed by applying to the Minnesota intrastate rates on the commodities in issue herein the same respective increases as are and for the future may be maintained by the respondents on like interstate traffic between points in Minnesota and adjoining States under our authorization in Ex Parte No. 175, provided, however, that increases may not be made which result in levels of rates and charges higher than the general levels of interstate rates and charges maintained on like traffic for movements to and from points in Minnesota.

"5. The establishment of increased intrastate rates and charges as provided in finding 4 will not result in unreasonable rates or charges, or rates and charges that are unreasonable in relation to interstate rates and charges, will increase the respondents' revenue substantially, and will provide not more than a just proportion of the respondents' total railway operating income.

"6. The increased revenues to the respondents which will result from increased rates and charges as provided in finding 4 are required from

of such service; and to the need of revenues sufficient to enable the carriers,

under honest, economical, and efficient management to provide such service."

intrastate traffic in Minnesota in order to enable the respondents to furnish adequate and efficient railway transportation service.

"The foregoing findings and conclusions are without prejudice to the right of the authorities of the State of Minnesota, or of any interested party, to apply for modification thereof as to any individual rate or charge affected thereby on the ground that such rate or charge is not related to the interstate rates or charges on like traffic in such a way as to contravene the provisions of the Interstate Commerce Act.

"An order carrying into effect the foregoing findings and conclusions will be entered, unless this Commission is notified by the Minnesota Commission within 30 days from the service of this report that the State Commission will permit the increases required to remove the unlawfulness herein found to exist."

By a report and order of May 20, 1957, the Minnesota Commission authorized the increases in the intrastate rates in question, although still of the opinion that they were not justified, expressing its "reluctance to pursue the matter further in the courts."

■ The determination of the Commission, although not a formal order, had the same effect, and is subject to review. Frozen Food Express v. United States, 351 U.S. 40, 43–44, 76 S.Ct. 569, 100 L. Ed. 730.

Stated broadly, the contentions of the plaintiffs are that (1) the proceeding before the Commission should have been dismissed as premature; (2) the findings of the Commission are inadequate; and (3) the evidentiary basis for the findings is inadequate.

■ The power of the Interstate Commerce Commission to establish intrastate rates, in order to remove unjust discrimination against interstate commerce is not open to question, and the Commission is not required to wait until

a State Commission has sat in judgment on the issue of the allegedly discriminatory intrastate rates. State of Florida v. United States, 282 U.S. 194, 210, 51 S.Ct. 119, 75 L.Ed. 291. Since there is a disparity between the intrastate and interstate rates in suit, the Commission could at any time remove the disparity if it constituted, and could justifiably be found to be, an unlawful discrimination against interstate commerce. The contention that the proceeding resulting in the determination complained of by the plaintiffs was premature is without substantial merit.

The controlling questions in this case seem to be: (1) Whether the findings of the Commission are adequate to sustain its determination; and (2) whether the evidentiary basis for the finding that the intrastate rates were discriminatory as against interstate commerce was sufficient.

■ The findings of the Commission are similar to those which were sustained by the Supreme Court as sufficient in King v. United States, 344 U.S. 254, 267–276, 73 S.Ct. 259, 97 L.Ed. 301, a case analogous to the instant case. The plaintiffs are of the opinion that the decisions in State of North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L. Ed. 1760, and State of Alabama v. United States, 325 U.S. 535, 65 S.Ct. 1274, 89 L.Ed. 1779, require a ruling that the findings of the Commission are inadequate. It is to be noted that in each of those cases four Justices of the Supreme Court were of the opinion that the findings of the Commission were sufficient. In the King case, all but three of the Justices were of the opinion that the defects which were thought to exist in the findings in the North Carolina and Alabama cases were not present. In the King case the court held that specific findings as to what amount in dollars would be required to enable the railroads to operate efficiently were not indispensable. At page 274 of 344 U.S., at page 270 of 73 S.Ct. It was also held in that case that the Commission was not obliged to consider

the reasonableness of each intrastate rate before requiring an increase. At page 275 of 344 U.S., at page 270 of 73 S. Ct.

It would seem that a decision that the findings in the instant case were inadequate either with respect to the plaintiffs or the intervening plaintiff would not be justified.

■ In considering whether substantial evidence was before the Commission to justify the establishment of the interstate rates under Ex Parte No. 175 to the intrastate traffic on the commodities in question, it is not necessary for this Court to reinvestigate the reasonableness of the interstate rates as promulgated by the Commission in the Ex Parte No. 175 proceeding. And there is no showing here which tends to negative the premise that the revenue needs of the railroads in Minnesota are as great as the revenue needs of the railroads in their interstate transportation. Due weight also must be given to the evidence in the record which clearly establishes that the economy in Minnesota differs in no substantial respect from that which prevails generally throughout the Nation.

■ Plaintiffs emphasize the provisions of the 1946 Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. and point out that the substantiality of the evidence in support of the Commission's findings must be considered with reference to any evidence which may detract from its weight. But we cannot find on this record that the evidence introduced before the Commission in support of intrastate rates on bituminous coal, wood bolts, and short logs so adversely affected the evidence proffered by the railroads in support of the rate increases that there was a lack of substantial evidence in support of the Commission's findings. Certainly, ample evidence was before the Commission to sustain a finding that transportation conditions incident to rail intrastate transportation in Minnesota were not more favorable than rail interstate transportation of bituminous coal on interstate routes to and from points in this State. The number of trainmen required on local trains, the wages paid, the many train stops which necessarily are required in local transportation, together with other factors reflected in the record, amply established that the unit cost of rail transportation on intrastate traffic was at least equal to, and in many instances greater than, the railroads' interstate cost of comparable transportation. The Commission did not, as plaintiffs assert, merely consider the disparity between the intrastate and interstate rates on bituminous coal and conclude therefrom that the intrastate rates constituted an undue burden on interstate commerce.

That the railroads' operating expenses, including the price of materials, have increased substantially in recent years is evident from the record herein and is almost a matter of common knowledge. Their estimated revenue loss by being deprived of the increases in rates on intrastate shipments of the commodities in question is amply sustained. In fact, the computations of the witnesses for the railroads in this regard are attacked primarily because it is contended that, in the event of rate increases, consideration was not given to the increased competition which would result from truck traffic, to the greater use of water routes in the transportation of coal, and to the impact of the higher intrastate freight rates on the increasing tendency of consumers of coal to turn to the use of other forms of fuel, such as gas, fuel oil and lignite coal. The danger of diminishing freight revenue returns by the imposition of increased freight rates is always a relevant and formidable factor for the Commission to consider when such increases are promulgated. The nationwide impact of the increased rates under Ex Parte No. 175 no doubt is well known to the Commission. And that body is in a far better position than the Court to appraise and weigh the diverse opinions of witnesses for the railroads, the shippers, and the consumers in this regard. We cannot say, or even assume to predict, which prophetic opinions as to the impact of higher freight rates are the most sound

and reliable. We assume, however, that the railroads will avail themselves of any rights they may have to meet any such increased competition by decreasing their rates below the increases permitted under Ex Parte No. 175 when competitive circumstances suggest such adjustments.

A striking example of the adverse effect of the intrastate rates on coal in interstate commerce is to be found in the situation which exists at the Head of the Lakes, where these plaintiffs have their coal docks. Duluth, Minnesota, and Superior, Wisconsin, are twin ports at the head of Lake Superior. The coal now shipped from Superior to Minnesota destinations is subject to the interstate rates. Coal shipped intrastate from Duluth is transported under the intrastate rates, although adjustment in freight rates on coal shipped from Superior to competitive rail points in Minnesota has been made by the railroads. Substantial disparities nevertheless continue to exist, and will exist, until the present intrastate rates at Duluth are raised to the level of the rates set by Ex Parte No. 175.

There was no need for the Commission to segregate interstate and intrastate revenues in this proceeding. Illinois Commerce Commission v. United States, 292 U.S. 474, 483, 54 S.Ct. 783, 78 L.Ed. 1371. The conditions under which coal moves intrastate and interstate are substantially the same. From an operating standpoint, there is no substantial difference between the two classes of traffic, except that there is a higher cost in the handling of local trains as compared to the cost of handling interstate trains. And as the Commission pointed out, the fact that ton mile earnings on coal from Duluth to certain selected destinations in Minnesota were in excess of the ton mile earnings of the carriers on all types of rail traffic in the Nation, is not a persuasive factor in determining the need for increased revenues on coal shipped intrastate in Minnesota, particularly in absence of a showing as to the average length of the hauls considered in arriving at the average.

Consideration of the sufficiency of the evidence in support of the finding of the Commission that the intrastate rates on wood bolts and short logs cause unjust discrimination against interstate commerce requires some additional comment. It appears that the terms "wood bolts" and "short logs" are used interchangeably. They differ from pulpwood primarily in their respective dimensions. Pulpwood may include logs of a smaller diameter and different lengths. The only shipper of wood bolts and short logs in Minnesota is the intervening plaintiff, the Diamond Match Company. There are no shipments of wood bolts and short logs from Minnesota to other states, or from other states to Minnesota, except those which have been made for experimental purposes. The record does indicate, however, that some 236 cars were shipped from Cambridge, Minnesota, to Cloquet, Minnesota, over the Great Northern, and in that transportation the Great Northern traversed for a short distance the northwest corner of the State of Wisconsin. When a certain tree is harvested, there is no particular test to be applied as to whether it will be utilized for pulpwood or wood bolts. The market conditions may determine its use, although to be utilized for wood bolts the log must be freer from knots than if it is to be used for pulpwood.

Under the so-called Cashman Act of this State, M.S.A. § 218.41 et seq., certain Minnesota freight rates were promulgated which became effective January 1, 1914. Under that Act, the published rates on wood bolts and pulpwood were the same. In Ex Parte No. 168, the Interstate Commerce Commission authorized increases in rail rates on certain commodities which became effective September 1, 1949. Thereafter, the railroads sought authority to make the same increases on the same items on intrastate traffic within the State of Minnesota. The State Commission excepted pulpwood, but not wood bolts, from the general intrastate increase sought by the railroads. This fact resulted in published rates on pulpwood and wood bolts as sep-

arate items and wood bolts were subject to the rate increases provided in Ex Parte No. 168. Later, in a Section 13 proceeding in Interstate Commerce Commission Docket No. 30761, *Minnesota Freight Rates and Charges,* the Minnesota Commission was requested to promulgate the same increases in rates for both pulpwood and wood bolts. This was done. Later, when Ex Parte No. 175 increases became effective on interstate shipments and when the railroads requested authority of the Minnesota Commission to increase their intrastate rates accordingly, the Diamond Match Company made no appearance by reason of lack of notice. Thus, when the Minnesota Commission excepted from the Ex Parte No. 175 rates jack pine, aspen timber and pulpwood, the item of wood bolts was not included in the exceptions. On March 27, 1954, the Diamond Match Company filed a petition with the State Commission praying for an order excepting wood bolts and short logs, and after a hearing the Commission found, among other things,

> "There is active competition between persons and localities in the procurement of the commodities herein involved and the Minnesota intrastate rates on these commodities cause undue and unreasonable advantage and preference of the shippers of pulpwood, and undue and unreasonable prejudice and disadvantage to the shippers of wood bolts and short logs."

In the order, wood bolts and short logs were accorded the same intrastate freight rates which had been allowed to the theretofore excepted pulpwood. Now that the Minnesota Commission has issued its order of May 20, 1957, and the interstate rate of Ex Parte No. 175 has become applicable to pulpwood, no petition has been filed attacking the increases authorized with respect to that commodity.

In the proceeding before the Minnesota Commission when the question of the exception of wood bolts and short logs from the rates established by Ex Parte No. 175

was being considered, the intervening plaintiff here strongly emphasized the direct intrastate competition which existed between the shippers and receivers of pulpwood and the shippers and receivers of wood bolts and short logs. That such competition exists is admitted in this proceeding, but the intervening plaintiff stresses the fact that there is no showing in the record that any competitive relationship exists between intrastate shippers and receivers of wood bolts and short logs and interstate shippers and receivers of pulpwood. And it is pointed out that the record does not even disclose the interstate freight rates and charges for wood bolts and short logs. But the Commission as to wood bolts and short logs did not make any finding on the record here that there was any undue preference and prejudice between persons and localities in intrastate and interstate commerce. It concluded, however, that the transportation characteristics of pulpwood, wood bolts, and short logs were the same. This is evident because the rate history of both commodities before the State Commission and the Interstate Commerce Commission has disclosed definitely that such commodities should be subject to the same freight rates. Pulpwood, short logs, and wood bolts being forest products having similar transportation characteristics suggests that they should bear the same proportion of the total revenues needed for the railroads. Apparently no one now attacks the reasonableness of the interstate rate on pulpwood, at least not in this proceeding. If wood bolts and pulpwood always have been considered to have the same transportation characteristics so as to justify the same intrastate rate, it would seem that we are not in a position to overrule the expert opinion of the Commission on this record that there is unjust discrimination in permitting wood bolts to remain on an intrastate rate and that these forest products should contribute the same fair share to the total transportation revenue requirements of the railroads. The mere fact that wood bolts and short logs do not move in interstate

commerce to any substantial extent does not deprive the Interstate Commerce Commission of jurisdiction if the lower intrastate rate is not bearing its just proportion of the total transportation burden. Its determination that pulpwood, wood bolts, and short logs should all be subject to the interstate rate is, on this record, a matter peculiarly within its province to determine, and not for the Courts.

Our consideration of the record in support of the findings made by the Commission as to the need for increased revenue on bituminous coal, wood bolts, and short logs convinces us that substantial evidence supports its findings. Any alleged prejudice resulting from any error of the Examiner in determining the sufficiency of the foundation for certain evidence received and the other procedural matters of which complaint is made do not require any discussion. The errors, if any, are not of sufficient gravity to justify the setting aside of the order of the Commission. The Court being convinced, therefore, that the Commission acted upon sufficient findings which are supported by substantial evidence, the language of the Supreme Court in King v. United States, 344 U.S. 254, 272, 73 S.Ct. 259, 269, 97 L.Ed. 301, is strikingly appropriate here:

"The Commission has applied to the Florida operations the same conclusion it reached as to the need for increased revenue on a national basis and has distributed the burden within Florida along the same lines it followed when estimating the revenues available in the southern territory from intrastate as well as interstate operations. In the absence of any showing that it is not applicable to Florida, the evidence which forms the basis of the Commission's nationwide order becomes the natural basis for its Florida order."

It follows, therefore, that the plaintiffs and intervening plaintiff have not sustained their right to a decree suspending, enjoining, setting aside and restraining the enforcement, application and operation of the order of the Interstate Commerce Commission in Docket No. 31798, *Minnesota Intrastate Freight Rates and Charges*, pursuant to which the order of the Minnesota Commission of May 20, 1957, in its Docket No. A–7138–3 was issued; that therefore the complaint and intervening complaint should be, and hereby is, dismissed; and that the temporary injunction heretofore issued should be, and hereby is, vacated, annulled, and set aside. It is so ordered.

A stay of thirty days is granted, and an exception is allowed.