LESTER C. NEWTON TRUCKING
COMPANY, a corporation, et al.,
Plaintiffs,

v.

UNITED STATES of America and Inter-
state Commerce Commission,
Defendants.

Civ. A. No. 2406.

United States District Court
D. Delaware.

Sept. 19, 1962.

H. James Conaway, Jr., and Samuel
R. Russell, Morford, Young & Conaway,

Wilmington, Del., H. Charles Ephraim, Washington, D. C., and William J. Augello, Jr., New York City, for plaintiffs.

Alexander Greenfeld, U. S. Atty., and Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for defendant United States of America.

Fritz R. Kahn, Washington, D. C., for defendant Interstate Commerce Commission.

Joseph H. Geoghegan, Berl, Potter & Anderson, Wilmington, Del., R. Edwin Brady, Harry J. Breithaupt, Jr., Washington, D. C., T. Randolph Buck, Richmond, Va., James G. Lane, Boston, Mass., James W. Nisbet and Ed White, Chicago, Ill., Carl Helmetag, Jr., Philadelphia, Pa., and J. Edgar McDonald, New York City, for intervening railroad and trucking defendants.

BIGGS, Circuit Judge, LAYTON, District Judge, and RODNEY, Senior District Judge.

RODNEY, Senior District Judge.

This is an action pending before a Three Judge Court convened pursuant to 28 U.S.C. §§ 2281–2284 and 2321–2325. The case seeks injunctive relief restraining the enforcement, operation or execution of an order of the Interstate Commerce Commission and calls for an interpretation of a provision of the Interstate Commerce Act,[1] as amended by Section 7 of the Transportation Act of 1958.[2]

The present matter had its origin on February 5, 1959 in a petition of the National Association of Frozen Food Packers and some 35 other associations, packers and carriers to the Interstate Commerce Commission for a Declaratory Order that carriers of frozen cooked vegetables, such as french fried potatoes, had been exempt from regulation by the Interstate Commerce Commission prior to the Transportation Act of August 12, 1958.

The petition was filed pursuant to Sec. 5(d) of the Administrative Procedure Act, 5 U.S.C. § 1004(d) and was opposed by some 25 railroad and other organizations.

The matter was referred to an examiner, who took considerable testimony on April 27 and 28, 1959. Without a report from the examiner, the Commission considered the petition for a declaratory order as discretionary and deemed it not necessary. The Commission treated the petition as calling for an interpretive order and this was issued September 28, 1959 designated MC–C–2522. In this order the Commission concluded and found:

"that the term 'agricultural (including horticultural) commodities (not including manufactured products thereof)' as used in section 203 (b) (6) of the Interstate Commerce Commission Act prior to the amendment thereof by the Transportation Act of 1958, did not include frozen french fried potatoes, frozen rissole potatoes, frozen potato puffs, frozen candied sweet potatoes, frozen whipped potatoes, frozen french fried onion rings, frozen precooked pouch-packed vegetables in general, and frozen precooked pouch-packed vegetables with sauce in particular."

The Commission further concluded and found:

"that such term did not include any vegetable which has been cooked in water or steam for a period longer than that necessary for the inactivation of the enzymes; any frozen vegetable which has been cooked by immersion in oil or fat; or any vegetable product the ingredients of which include vegetable matter combined with other commodities."

The petitioners filed a petition for reconsideration and at the same time other parties filed petitions for a declaratory order with reference to the general subject matter designated as MC–C–2708 and MC–C–2738. All three petitions were denied by the Commis-

---

1. 49 U.S.C. § 303(b) (6).

2. 72 Stat. 573.

sion by order dated August 3, 1959 and this action concerning solely MC–C–2522 followed.

It will be seen that this case does not come before the Court in the nature of an appeal from a definitive order as applicable to any particular party, but calls in question an interpretive opinion of the Commission by which the Commission gives its general interpretation of the Statute.

■ A somewhat similar order of the Commission was considered in Frozen Food Express v. United States, D.C., 128 F.Supp. 374. There in a proceeding instituted by the Commission itself, the Commission made an investigation of the meaning of the statutory language and issued its findings. The District Court held that such findings of the Commission did not constitute such an "order" from which an appeal could be taken. The Supreme Court in Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730, reversed the holding of the District Court, Justice Harlan dissenting. While some differences appear between that case and the present, yet the close similarity of the matter involved requires that jurisdiction be now assumed and the matter further investigated.

The Statute giving the Interstate Commerce Commission jurisdiction over motor vehicles provided:

"Nothing in this chapter  *  *  * shall be construed to include motor vehicles used in carrying  *  *  * agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property  *  *  *." 3

■ This exemption of agricultural products from the application of the Act "was designed to preserve for the farmers the advantage of low cost mo-

tor transportation," 4 and "manufactured" products were excepted from the exemption.

Many difficulties arose both in the Commission itself and in the courts in determining what products were properly termed "agricultural products" and what were "manufactured" and incessant demands were made for a clarification of the statute.

On March 19, 1958 the Interstate Commerce Commission filed a comprehensive administrative ruling No. 107 concerning the status of various commodities under the partial exemption of Section 303(b) (6) of the Interstate Commerce Act, as found in 49 U.S.C. In this document were listed all of the opinions of the various courts, the holding of the Commission itself and the Bureau opinions indicating as to each commodity whether it was considered "exempt" or "not exempt."

Congress in answer to repeated demands for clarification of the Statute acted quickly. By Act approved August 12, 1958 5 it adopted the Ruling 107 of the Interstate Commerce Commission in the following language (eliminating language immaterial to the present question):

"(a)  *   *   *  Provided, That the words  *   *   *  agricultural  *   *   *  commodities (not including manufactured products thereof) as used herein shall include property shown as 'exempt' in the 'Commodity List' incorporated in the ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as 'Not exempt' *Provided further however,* That notwithstanding the preceding proviso the words  *  * agricultural  *   *   *  commodities (not including manufactured products thereof) shall not be deemed to

---

3.  49 U.S.C. § 303(b) (6).

4.  East Texas Motor Freight Lines v. Frozen Food Express, 351 U.S. 49, 51, 76 S.Ct. 574, 100 L.Ed. 917.

5.  Section 7 of the Transportation Act, Public Law 85–625, 72 Stat. 573.

include *  *  *  *frozen vege-tables.*"

The Amendment in addition to "frozen vegetables" goes on to list ten other specific commodities that shall be treated as not exempt. The Congressional intention was to determine the agricultural exemption at its then level and then to accomplish a "roll back" to remove certain articles from the exemption. To accomplish the former they adopted the Commission's Ruling 107 as determinative of what was or was not then exempt and to effect the latter they listed 11 specific types of commodities that had been held "within the exemption" and would be "returned to regulation."

It will thus be seen that while "agricultural products" had been exempt from the operation of the original Act then by this Amendment the term "frozen vegetables" was returned to regulation. If legislation had ceased at this point, the present questions would not be presented.

A later subsection of the Amendment established the so-called "grandfather rights" which required the Commission to issue an operating permit without a hearing on public convenience and necessity to certain persons indicated in Section (c) as follows:

"(c) Subject to the provisions of Section 210 of the Interstate Commerce Act, if any person (or its predecessor in interest) was in bona fide operation on May 1, 1958, over any route or routes *  *  * in the transportation of property for compensation by *motor vehicle made subject to the provisions of part II of that Act by paragraph (a) of this section,* in interstate or foreign commerce, and has so operated since that time *  *  * the Interstate Commerce Commission shall without further proceedings issue a certificate or permit, as the type of op-

eration may warrant, *  *  *". (Emphasis supplied)

This certificate or permit was to be "issued" if application therefor was made within a stipulated time which we understand was complied with.

It is the italicized portion of this Section that is here in question.

The gist of the plaintiffs' claim is that motor vehicles transporting the indicated commodities, viz., frozen french fried potatoes and the other commodities listed in the footnote,[6] were exempt or entitled to be exempt from regulation by the Interstate Commerce Commission immediately prior to the Amendment of 1958 and were made subject to the provisions of the law by the Amendment. As a consequence the plaintiffs contend they are entitled to the benefit of the grandfather clause and to a certificate from the Interstate Commerce Commission without a showing of "public convenience and necessity."

The defendants contend that two cases are dispositive of the plaintiffs' claim. The first, Milk Transport, Inc. v. I. C. C., D.C., 190 F.Supp. 350, affirmed per curiam, 368 U.S. 5, 82 S.Ct. 15, 7 L.Ed. 2d 16, involved an application by transporters of citrus juices for a grandfather permit. Administrative Ruling 107 had listed the commodity as "not exempt" prior to the 1958 Amendment. Plaintiff in the cited case contended that citrus juices had, in fact, been entitled to exemption prior to 1958, were first made subject to the regulation by the Amendment and were entitled to grandfather rights. The Court refused to adopt this theory, however, saying the Congress' adoption of Ruling 107 was conclusive in deciding that citrus juices had been "not exempt" prior to 1958 regardless of whether a court might have held otherwise had the question ever reached them before the Amendment and regardless of whether the transportation in citrus juices was in practice

6. Frozen rissole potatoes, frozen potato puffs, frozen whipped potatoes, frozen candied sweet potatoes, frozen winter squash, frozen french fried onion rings, frozen "pouch-pack" vegetables.

actually regulated before 1958. The Court held the grandfather provision in Section C applied only to the 11 commodities specifically listed in Section A as being returned to regulation and these were the only items made subject to regulation by the Amendment itself. Since none of these 11 commodities included citrus juices, the petition was denied.

An identical situation involving crude rubber arose in the second case cited by the defendants. Midwest Emery Freight System, Inc. v. United States, D.C., 202 F.Supp. 229. The Court there treated the citrus juice case as controlling and reached the same result.

In these cases, however, the goods in question could not, even arguably, be said to be included in the 11 commodities vested with grandfather rights. Conversely here, as the plaintiffs argue, all the frozen foods in question might be included under the general head "frozen vegetables," which is one of the 11 commodities mentioned in the Statute.

It will thus be seen that the ultimate question to be decided by this Court is whether frozen french fried potatoes (and the other commodities mentioned in footnote 6) were declared exempt by the Amendment of 1958 of the Transportation Act which incorporated Ruling 107 of the Interstate Commerce Commission.

It seems clear that "cooked" vegetables were expressly named as not exempt in Ruling 107 specifically adopted by Congress in the Amendment of 1958.

Certain specified vegetables frozen under indicated and limited circumstances were considered in Home Transfer & Storage Co. v. United States, D.C., 141 F.Supp. 599 and held exempt. This case was affirmed in 352 U.S. 884, 77 S.Ct. 129, 1 L.Ed.2d 82.

It appears that fresh frozen fruits or vegetables are, prior to the freezing process, subjected to blanching or to heat, to such a degree as will inactivate the enzymes. So in the Home Transfer & Storage case the Court held that the application of the degree of heat indicated is adequate to inactivate the enzymes and the subsequent quick freezing of the vegetables did not essentially change their character.

The Interstate Commerce Commission by its interpretive opinion concludes that the vegetables herein enumerated being cooked beyond the point required to inactivate the enzymes have been so materially changed in texture from the original vegetable as it came from the field as to make them subject to the control by such Commission.

The Home Transfer & Storage Case, 141 F.Supp. 599, affirmed 352 U.S. 884, 77 S.Ct. 129, 1 L.Ed.2d 82, seems to furnish the chief basis of the plaintiffs' claim that "frozen vegetables" as such were exempt prior to the passage of the 1958 Amendment.

The Home case, however, did not hold that "frozen vegetables" as such were exempt from control by the Interstate Commerce Commission. What it did hold was that fresh vegetables which had been subjected only to quick freezing were exempt. The Court explained the term "quick freezing" by stating:

"The processing of fresh vegetables for quick freezing is to heat them, in some instances after first splitting them to hasten heat action, sufficiently to kill the enzymes, and then to follow with the desired degree of freezing."

Succinctly then this problem is thus presented.

Ruling 107 of the Interstate Commerce Commission specifically adopted by Congress, provides that cooked vegetables are not exempt and were not exempt prior to the Amendment of 1958. Ruling 107 also provides that "vegetables, frozen, fresh" were exempt under the Home Transfer & Storage case.

These provisions are of equal weight and validity and both must receive full recognition by this Court. It is clear that some construction must be adopted to harmonize and give effect to both provisions. The authoritative ruling that

held that frozen vegetables were exempt was the Home Transfer case. That case, however, held that the vegetables there concerned by mere blanching to the point of inactivation of the enzymes and then frozen remained essentially in the same shape and form as non-processed vegetables. In effect the Court held that the blanching merely to the point of destroying the enzymes and then freezing did not change their character as fresh vegetables. This then constitutes the line of demarcation and gives effect to each provision of the statute. Any other conclusion does violence to the express Act of Congress. A conclusion that any blanching or cooking of a vegetable destroys the exemption provided by Congress is contrary to the express language of the Home Transfer case, as affirmed by the Supreme Court. A determination that unrestricted cooking followed by freezing creates an exemption is directly contrary to the conclusion reached by the Interstate Commerce Commission as indicated in the Ruling 107 and expressly adopted by Congress, which said that "cooked vegetables" were not exempt.

■ "The [Interstate Commerce] Commission is the expert in the field of transportation. And its judgment is entitled to great deference because of its familiarity with the conditions of the industry which it regulates."[7] The Commission has adopted the view of the Supreme Court that cooking vegetables to the point of inactivation of the enzymes and then freezing them leaves such vegetables as frozen fresh vegetables and exempt from regulation. The Commission has concluded that cooking vegetables beyond the point indicated and then freezing them makes them fall within the classification of "cooked vegetables" which Congress has said are not exempt.

We cannot say that the construction put upon the Statute by the Commission is unreasonable. Indeed, it would be difficult to phrase a different result without doing violence to the indicated intention of Congress.

Objection is made by the plaintiffs that the result of the conclusion of the Commission is to atomize or fragmentize the industry. If this be true, the result is caused by the Act of Congress itself and the remedy must there be sought.

This case has certain peculiarities. Essentially it is in the nature of an appeal from an interpretive order of the Interstate Commerce Commission. That interpretive order first dealt with certain specific frozen vegetables deemed to be involved in the proceeding before the Commission. These particular frozen vegetables and the holding of the Commission are set out at the beginning of this opinion. The Commission thus held that the indicated commodities were subject to regulation. To this extent the matter seems clear and the correctness of the holding of the Commission capable of determination.

The Commission, however, went further and set out three criteria which they indicated might be applied in the future as to agricultural products in general. This portion of the interpretive order was as follows:

"We further conclude and find that such term [agricultural commodities (not including manufactured products thereof)] did not include any frozen vegetable which has been cooked in water or steam for a period longer than that necessary for the inactivation of the enzymes; any frozen vegetable which has been cooked by immersion in oil or fat; or any vegetable product the ingredients of which include vegetable matter combined with other commodities."

The plaintiffs, in answer to an inquiry by the Court, indicate that they are of the opinion that this Court should pass upon the validity of each criterion, in

---

7. East Texas Motor Freight Lines v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917.

addition to the matter specifically before the Commission. This position is opposed by the defendants.

It is conceded that each one of the specific frozen vegetables mentioned in the proceedings before the Interstate Commerce Commission and now before this Court comes within the first criterion, viz., that each commodity had been cooked in water or steam for a period longer than that necessary for the inactivation of the enzymes. The Commission was of the opinion that these commodities were not exempt prior to the Amendatory Act of 1958 and therefore not entitled to the benefits of the "grandfather" rights provided by Sec. C of the Act and were subject to regulation. As indicated herein, we agree with this conclusion and so hold.

Insofar as the first criterion refers to and determines the status of commodities then before the Interstate Commerce Commission, we think it such an "order" as to form the basis of this action. This we think is in accordance with Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730. Insofar as the first criterion refers to the status of commodities not before the Commission or considered by it, we do not think it such an "order" as to form the basis of injunctive proceedings or proceedings in the nature of appeal but rather as an indication of probable course of future conduct if occasion should arise. So, too, of the two remaining criteria, viz., "any frozen vegetable which has been cooked by immersion in oil or fat" or any vegetable product "combined with other commodities." Few of the commodities here involved are included in either of these criteria. No substantial testimony concerned either. The criteria contemplated application in the future to uncertain and unnamed commodities which have not been considered by the Commission.

We think that questions arising from the criteria and especially their application to commodities which have received no consideration by the Commission may more properly be directly presented upon a hearing on a "cease and desist" order if such occasion arises. This was the appropriate procedure suggested by Justice Harlan in 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730.

Findings of fact and conclusions of law are set out in this opinion in accordance with Rule 52(a), Fed.R.Civ. Proc., 28 U.S.C.

We approve the explicit holding of the Interstate Commerce Commission as to the commodities there considered and must refuse the injunction prayed for and dismiss the complaint.

An appropriate order may be submitted.