Justice KAGAN, concurring.
I join the Court's opinion in full. I write separately to note that for me, unlike for Justice GINSBURG, see post, at 1817 (opinion concurring in part and concurring in judgment), the memorandum of agreement between the Army Corps of Engineers and the Environmental Protection Agency is central to the disposition of this case. For an agency action to be final, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). As the Court states, the memorandum of agreement establishes that jurisdictional determinations (JDs) are "binding on the Government and represent the Government's position in any subsequent Federal action or litigation concerning that final determination." Memorandum of Agreement §§ IV-C-2, VI-A; ante, at 1814 (majority opinion). A negative JD thus prevents the Corps and EPA-the two agencies with authority to enforce the Clean Water Act-from bringing a civil action against a property owner for the JD's entire 5-year lifetime. Ante, at 1814 - 1815, and n. 3. The creation of that safe harbor, which binds the agencies in any subsequent litigation, is a "direct and appreciable legal consequence[ ]" satisfying the second prong of Bennett , 520 U.S., at 178, 117 S.Ct. 1154.
Justice GINSBURG, concurring in part and concurring in the judgment.
I join the Court's opinion, save for its reliance upon the Memorandum of Agreement between the Army Corps of Engineers and the Environmental Protection Agency. Ante, at 1814 - 1815, and n. 3 (construing the memorandum to establish that Corps jurisdictional determinations (JDs) are binding on the Federal Government in litigation for five years). The Court received scant briefing about this memorandum, and the United States does not share the Court's reading of it. See Reply Brief 12, n. 3 (memorandum "does not address mine-run Corps jurisdictional determinations of the sort at issue here"); Tr. of Oral Arg. 7 (same); id., at 9 (reading of the memorandum to establish that JDs have binding effect in litigation does not "reflec[t] current government policy"). But the JD at issue is "definitive," not "informal" or "tentative," Abbott Laboratories v. Gardner, 387 U.S. 136, 151, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and has "an immediate and practical impact,"
*1818 Frozen Food Express v. United States, 351 U.S. 40, 44, 76 S.Ct. 569, 100 L.Ed. 910 (1956). See also ante, at 1814 - 1815.* Accordingly, I agree with the Court that the JD is final.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Bennett v. Spear, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), contrary to Justice KAGAN's suggestion, ante, at 1817, (concurring opinion) does not displace or alter the approach to finality established by Abbott Laboratories v. Gardner, 387 U.S. 136, 149-151, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and Frozen Food Express v. United States, 351 U.S. 40, 44, 76 S.Ct. 569, 100 L.Ed. 910 (1956). Bennett dealt with finality quickly, and did not cite those pathmarking decisions.