**YORK TRANSPORT COMPANY et al.,**
**Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS,**
**Appellee.**

No. 10559.

Court of Civil Appeals of Texas.

Austin.

June 18, 1958.

Rehearing Denied July 16, 1958.

**314**

Kelley, Looney, McLean & Littleton, Edinburg, Kenneth McCalla, Walter Caven, Austin L. Hatchell, Austin, for appellants.

. Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., J. W. Wheeler, Asst. Atty. Gen., Callaway, Reed, Kidwell & Brooks, Dallas, Looney, Clark, Moorhead & Mathews, Thomas E. James, Mary Joe Carroll, Austin, for appellee.

GRAY, Justice.

By this suit appellants attacked an order of the Railroad Commission and have appealed from a judgment upholding it.

The suit was brought by two specialized motor carriers and nine railroad companies against the Commission. Seventeen specialized motor carriers intervened, aligned themselves with the Commission at the trial and are so aligned here.

The order under attack is General Order 35 by which the Commission, on its own motion, after notice and hearing, determined that eighty-five named commodities are "liquid derivatives of hydro-carbons and are petroleum products." By the recitals in the order it is clear that the Commission purported to act under the authority of Sec. 4 of Art. 911b, Vernon's Annotated Civil Statutes, vesting the Commission with the power and authority and making it its duty which, whether therein mentioned or not, generally is "to supervise and regulate motor carriers in all matters affecting the relationship between such motor carriers and the shipping public that may be necessary in the interest of the public." This of course means public interest rather than the individual's interest.

Admittedly if General Order 35 is sustained then all carriers holding a permit issued by the Commission authorizing such carriers to transport petroleum products may transport any or all of the eighty-five named commodities, subject, of course, to tariffs prescribed and equipment approval.

Appellants here present four points. The first three are to the effect that the order was issued without legal authority and that the trial court erred in upholding General Order 35 because: (1) it was an attempt by the Commission to construe and interpret its own previous final orders; (2) it was an attempt to grant additional transportation authority to specialized motor carriers having authority to transport "petroleum and petroleum products" and violates the motor carrier Act, and (3) the order is retroactive in nature and in effect. We quote point four:

"The District Court erred in refusing to consider or give effect to the long established policy of the Railroad Commission in clearly distinguishing between the two separate commodity classifications 'petroleum and petroleum products,' on the one hand, and 'chemicals and acids,' on the other hand, and also failing to consider or

give effect to the reliance upon and action under the continuing policy of the commission by persons and carriers affected by its orders, the transportation authorized by the statute not being subject to sudden change through capricious definition contrary to the established policy of the Commission and the practice in the industry affected."

Appellees have filed their motion to dismiss this cause. They say General Order 35 is not appealable and rely on the recent opinion of the Supreme Court in Sun Oil Co. v. Railroad Commission, 311 S.W.2d 235, 237. Although the facts before the Court in the Sun case and the facts here are in some respects similar they are distinctly different. In view of appellant's contention and our statement we are required to compare the facts and the order before the Court in the Sun case with the facts and the order here.

Briefly the facts in the Sun case show that Sun purchased tubular goods outside of Texas in anticipation of needs for its wells in Texas. Such goods were shipped into Texas where they were unloaded and placed in storage by a specialized motor carrier under contract with Sun. Thereafter, under directions from Sun and at intervals as needed the goods were taken out of storage by the carrier and delivered to the well sites of Sun at charges based on interstate tariffs which were lower than intrastate rates for the same service.

The order of the Commission was to the effect that when the goods moved from storage to the well sites they moved in intrastate commerce and subject to rates prescribed by the Commission.

The court said that the proceeding by the Commission "was one of investigation and declaration of the status of certain traffic" and that the order clearly foreshadowed "future action of the Commission in the event its pronouncements go unheeded by Sun and the other shippers named in the order." The court said:

"* * * traffic under conditions prevailing at the time of the order and only possibly to prevail thereafter is declared subject to intrastate rates but will have to be the subject matter of additional proceedings before any liability, civil or criminal, on the part of the petitioner, Sun Oil Company, or the other named shippers will accrue. In other words, the latter are in no different position by reason of the order than they were before. Proceeding as they have been, and assuming the view of the Commission to be correct as to the intrastate character of the traffic, they could have been moved against by the Commission even without any preceding declaratory order such as that before us. And assuming they will be proceeded against hereafter, they will be as free to contend the traffic in question to be interstate as if the order were never made. The only difference the order makes is that they now have good reason to believe that they will be proceeded against, if they continue to follow the same shipping system and to pay the interstate rate."

The order (99) in the Sun case recites that the Commission "took up for consideration the matter of practices certain motor carriers are engaged in, who are subject to the jurisdiction of the" Commission. The order contains a finding that the carriers were hauling tubular goods in violation of tariffs prescribed by the Commission. Clearly the recitals of the order show that the Commission was acting under Sec. 14(a) of Art. 911b supra, giving the Commission "power and authority" to "* * * institute and investigate any matter pertaining to motor carriers upon its own motion." And perhaps show that the Commission was making an investigation preparatory to the institution of proceedings under Sec. 12(b) for violation of lawful orders, rules, rates or regulations of the Commission. The court recognized this for it said:

"This practice coming to the attention of the Commission, the latter * * issued its General Order 99, which may be said to be part of the order under attack * * *".

The order here among other things recites:

"The Commission further finds that the petroleum carriers serve a distinct class of shipper or receiver, namely the petroleum and petroleum refining industry. Such motor carriers should be in a position to solicit the traffic of that industry without being required to determine beforehand whether the commodity is a petroleum product, or because in the refining process it has been subjected to some chemical formula which in the opinion of chemists renders it some commodity other than a petroleum product."

And as above noted the Commission acting under Sec. 4, supra, determined, from expert testimony, that the eighty-five named commodities are petroleum products.

In the Sun case the court quoted from United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651. There the court said that the complained of order did not command the carrier to do, or refrain from doing, anything and did not grant, or withhold, any authority, privilege or license. Here the order changed the theretofore presumed existing and future status of authorized carriers of petroleum products by determining their right to haul eighty-five named commodities which theretofore had not been considered as included within their permits. Future action is not necessary to establish this right.

It is true that if such commodities are in fact petroleum products they were such prior to the order, however they had not been so recognized by the Commission, the carriers or the shipping public.

There is not present here any element of prior violations by any carriers and no element foreshadowing future action by the Commission against any carrier.

The Commission has made its decision that the named commodities are petroleum products, it has entered its order that they are such, and regulation of their transportation necessarily follows. Sec. 13a of Art. 911b supra, and also tariffs to be charged.

If an appeal is denied appellants then a review of their rights under the order is denied them because: (1) the order forecloses future action by the Commission and constitutes its final ruling and decision; (2) the order leaves nothing further for the Commission to decide, and (3) it is highly improbable that appellants could secure a hearing on a complaint charging a violation of authority by a carrier transporting the named commodities under a permit authorizing the transportation of petroleum products.

We hold that under Sec. 20 of Art. 911b supra this appeal lies and appellee's motion is overruled.

We will discuss appellants' points in their order.

■ General Order 35 affects all specialized motor carriers holding permits issued by the Commission authorizing the transportation of petroleum products as well as all competing carriers. It was purportedly issued under legal authority imposing upon the Commission the duty, and vesting it with authority, to regulate the transportation of petroleum products in the interest of the public and the relationship between the carriers and the shippers. Sec. 4 supra. It was a general order and the mere fact that it had the effect of including commodities within previously issued permits which commodities were not theretofore believed to be so included would not render it illegal as an interpretation of a prior final order. It would govern future permits. This is true because if, as determined by the Commission, the named commodities are petroleum products they were such prior to the order and could have been transported as such without constituting a violation of authority. The mere fact that appellants, specialized motor carriers, had, prior to the order, taken the precaution to secure permits authorizing them to transport some of the named commodities would not change their status as petroleum products. Appellants' point one is overruled.

■ From what has been said it necessarily follows that by General Order 35 the Commission did not grant additional authority to specialized motor carriers because under their permits they had authority to transport petroleum products. Point two is overruled.

■ Even if the Commission, in dealing with the named commodities, was limited to the situation as of the time that it entered General Order 35, the mere fact that the commodities were determined to be petroleum products and the order actually resulted in establishing that authorized carriers could transport such commodities as such products did not make the order retroactive because the status of the commodities were not changed. Such status was merely determined. Point three is overruled.

It is generally well known that refining processes separate crude petroleum into many commodities and that refining processes change and new commodities are produced. This question has been before the Interstate Commerce Commission and it has entered its finding which is directly in point with the facts here. In a proceeding identified as Docket Ex Parte MC–45, Description in Motor Carrier Certificates, Interstate Commerce Commission Reports (Motor Carrier Cases) Vol. 61, p. 209, that Commission stated that some of the parties took the position that the term petroleum products means any and all products derived from petroleum, and at page 266 said:

"This principle was adhered to in Ford Bros. Extension of Operations— Virginia, 47 M.C.C. 731, wherein division 5 said at page 735:

"'* * * we have consistently found that a motor carrier, engaged in the transportation of petroleum products, in bulk, in tank trucks, should not, except in certain circumstances, be restricted to the transportation of only certain petroleum products.'

"We approve that principle. Our findings are intended to authorize the transportation of all derivatives of crude petroleum, including liquid petrochemicals. Asphalt and waxes are included even though they can only be transported in tank vehicles by the use of heat or compression. All service must be in tank vehicles which, as special equipment, includes all types.

"We find that the class heading 'Petroleum and petroleum products in tank vehicles' and the list specifying the commodities embraced with that heading, as set forth in appendix XIII, will be just and reasonable."

Appendix XIII lists numerous commodities.

In their brief appellants say:

"The term 'petroleum and petroleum products' was a commodity description which developed a characteristic meaning of its own in line with its interpretation by the Commission. That term assumed an important connotation in its transportation sense as including a group of well understood specific commodities (gasoline, kerosene, lubricating oil, etc., * * *)."

They also say that in issuing prior permits to specialized motor carriers authorizing the transportation of petroleum products the Commission had always followed the above classification and had advised appellants that their existing authority to transport petroleum and petroleum products did not include the right to haul certain chemicals, and that they would have to apply for specific authority to transport chemicals. They argue that the Commission is bound by its prior positions.

We think it is immaterial whether the position of appellants is termed as estoppel, res judicata or some other term. The order here in question shows that the Commission has made an investigation and has determined that the named commodities are petroleum products. Perhaps this is due to new refining processes and certainly it is shown that by investigation it has been determined that the named commodities are petroleum products and thereby a change of conditions is in any event shown. "If conditions change, rights change, and the governing statutes place the matter of ascertaining such rights and determining the facts relating thereto in the first instance under the jurisdiction of the Railroad Commission." Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106, 1111.

■ New and substantial evidence was heard by the Commission as to commodities included within the term "petroleum products." For which reason prior action of the Commission cannot be given the effect of res judicata. City of McAllen v. Morris, Tex.Civ.App., 217 S.W.2d 875, er. ref. For the same reasons the doctrines of stare decisis and equitable estoppel do not apply. 73 C.J.S. Public Administrative Bodies and Procedure § 148, p. 482. Moreover the order in question is declaratory, issued in clarification of the meaning of the term "petroleum products" and was one that the Commission was authorized to issue. 73 C.J.S. Public Administrative Bodies and Procedure § 150, p. 483. The order is declaratory and "touches vital interests of carriers and shippers alike and sets the standard for shaping the manner in which an important segment of the trucking business will be done." Fro-

zen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 571, 100 L.Ed. 910.

Point four is overruled and the judgment of the trial court is affirmed.

Affirmed.