The STATE of Texas, Appellant,

v.

V. C. BILBO, Appellee.

No. 11167.

Court of Civil Appeals of Texas.

Austin.

April 1, 1964.

Rehearing Denied May 27, 1964.

Waggoner Carr, Atty. Gen., Norman Suarez, Asst. Atty. Gen., Austin, for appellant.

Lanham & Hatchell, Austin, for appellee.

PHILLIPS, Justice.

This case involves the construction of a limited common carrier motor carrier certificate No. 3047 issued by the Railroad Commission of Texas to V. C. Bilbo in 1939.

Appellant, The State of Texas, through its Attorney General and at the request of the License and Weight Division of the Texas Department of Public Safety, brought this suit against Bilbo under the provisions of the Uniform Declaratory Judgments Acts, Art. 2524–1, V.A.C.S., alleging the existence of a controversy between Bilbo and the License and Weight Division of the Department of Public Safety, the latter Department having been designated by law to enforce the Motor Carrier Laws [1] of this State.

A number of amici curiae were allowed to tender briefs on both sides of the question before us.[2]

While Bilbo holds, in addition to certificate No. 3047, certificates Nos. 3039 and 5976, the terms of certificate No. 3047 are in controversy. The controversial part of the authority given Bilbo in the last named certificate is as follows:

TO TRANSPORT: HEAVY BUILDING MATERIALS, MACHINERY and SUPPLIES between all points in Texas.

We quote from the State's (plaintiff) petition:

"In this connection Plaintiff alleges that Defendant has been engaged for a substantial period of time, and is presently engaged in the transportation of commodities which are not those set out in this authorization from the Railroad Commission of Texas as described by the term heavy building materials, machinery and supplies between all points in Texas, namely: cartons of paint, cartons of color cards, cartons of medal spouts NOIBU, rolls of prepared roofing, rolls of prepared roofing on 2,000 lb. pallets, rolls of building paper, rolls of building paper on 2,000 lb. pallets, bundle asphalt shingle, bundles of asphalt shingles on 2,000 lb. pallets, rolls of asphalt siding, rolls of asphalt siding on 2,000 lb. pallets, boxes asbestos siding fixtures, bundle asbestos shingles, bundle asbestos shingles on 2,000 lb. pallets, 55 lb. drums of asphalt, cases of liquid asphalt in cans, packages of advertising matter, rolls of cotton cloth waterproof, rolls of cotton cloth waterproof on 2,000 lb. pallets, 20 lb. bags of fiberglass. Plaintiff contends that the transportation of the enumer-

1. Art. 911a et seq. V.A.C.S.

2. In support of the Trial Court's judgment: The Ruberoid Company, Bestwell Gypsum Co., Lumberman's Association of Texas. In support of the position taken by the State: Brown Express, Inc., Central Freight Lines, Inc.; Merchant's Fast Motor Lines, Inc., Red Ball Motor Freight, Inc.; Texas-Arizona Motor Freight, Inc. and Transportation League, Inc.

ated commodities are not 'heavy building materials, machinery and supplies', and, Defendant by its certificate is not authorized to transport such commodities, and therefore Defendant is violating the terms and provisions of its certificate, and furthermore, is guilty of violating the Motor Carrier Law in that the Defendant is transporting such commodities without any authority having been issued by the Railroad Commission of Texas authorizing such transportation, and is therefore, liable for the penalties provided in Article 1690b of the Penal Code of Texas."

Bilbo, the defendant below, answered with a general denial, then brought a cross action asking the court to enjoin the State from interfering with defendant's hauling the items enumerated in the State's petition.

Defendant contends that since 1940 he has been transporting heavy building materials, machinery and supplies between points in Texas under certificate No. 3047. That in the transportation of commodities under said certificate defendant and his shippers must exercise judgment as to what commodities may be transported thereunder. That such judgment must be exercised in consonance with accepted business practices. That from 1940 until the present time defendant has transported thousands of different types of building materials, machinery and supplies, which he considers to be authorized by such certificate, and which his consigners have tendered him as coming within the authority he possesses. That since 1940 he has notoriously carried the items listed above in the State's petition.

Defendant maintains further that the word "heavy" as used in the certificate modifies only building materials, and that he may transport any type of machinery and supplies, regardless of whether or not they are "heavy."

Defendant then points out that on numerous occasions he is tendered, for instance, a truckload of asbestos shingles weighing as much as 20,000 lbs. and along with such tender, he will be tendered several boxes of fixtures, or several cans of asphalt which are to be used to hold the shingles in place on a building. That while these incidental accessories are not of themselves "heavy building material, machinery or supplies," they are an integral part of the main shipment and must be considered as such. That it would be an economical impossibility and an impractical operation for a shipper to tender defendant a load of shingles and then send the accessories which are necessary for use in installing such shingles by another carrier, and, therefore, they become a necessary part of the main shipment.

Defendant contends further that the certificate must be construed in the light of changing methods and manners of shipping building materials, machinery and supplies. That because of technological advances and innovations in transportation of building materials, and because of the increase in costs of operation and in labor costs, it has become economically unsound for shippers to tender to defendant individual bundles of, for instance asbestos shingles. Because of increase in labor costs it is economically impossible for the shippers of such a commodity to load or unload such by individual bundles; consequently they are tendered defendant on pallets loaded by mechanical means, such as forklike trucks. This manner of loading and unloading building materials, machinery and supplies has become universally accepted by the companies engaged in the manufacture of such commodities and such method has become an economic necessity.

Defendant also points out that he has invested thousands of dollars in equipment, which is of a specialized nature and which is suitable for the transportation of such commodities.

The trial was to the court after which the court entered judgment that plaintiff take nothing by its suit.

The court found that in granting defendant his authority the Railroad Commission had the intention of furnishing the building industry "a flexible transportation service more suitable to their peculiar needs than any service available to such industry."

The court found that there was no controversy between the parties with respect to the authority to transport "machinery" and no claim was made by the plaintiff that defendant had violated the terms of his certificate in transporting machinery.

The court found that many single pieces of various building materials are of such size or weight as to become so heavy that mechanical devices are required to lift in loading or unloading onto and from the transporting vehicle.

The court found that manufacturers and shippers of certain other building materials and supplies, single pieces of which might be manually lifted in loading or unloading, tender such commodities to the carriers as a single unit of such weight as to require mechanical devices in loading or unloading; that such process of "palletizing" or "unitizing" single pieces of the materials or supplies used in building industry is widely used by the manufacturers and shippers for the protection of the material from damage in transit and for time and labor economies. That such units are of such weight as to be considered heavy building materials and supplies by the trade or industry requiring mechanical devices for handling in loading and unloading; that the defendant's certificate in question authorizes him to transport same.

The court further found that incidental supplies or accessories to heavy building materials tendered to the carrier are integral parts of such shipment of heavy building materials even though such incidental supplies or accessories, standing alone, could not be considered as heavy building materials. That defendant's authority allowed him to transport such incidental supplies or accessories.

The court held that defendant's certificate No. 3047 authorizes him, in addition to the transportation of heavy building machinery, to transport building materials and supplies, together with incidental supplies and accessories moving in conjunction with and as an integral part of a shipment of building materials, or supplies, which, because of the size or weight of the unit in which such materials and supplies are tendered to the carrier, require the use of mechanical equipment or devices, such as forklifts, for loading or unloading onto or off of the transporting vehicle.

The court denied the defendant an injunction against the State presuming that the State would abide by the judicial determination made by the court.

We affirm parts of the judgment of the Trial Court and reverse and render others.

There seems to be no controversy over defendant's hauling single pieces of heavy building equipment that requires a mechanical device for loading or unloading. The crux of the controversy seems to center around a device that the manufacturers of building materials have used for the past few years; that is, a "palletizing" or "unitizing" of certain items which individually could be loaded manually but when aggregated or grouped on pallets or boards and strapped together by steel bands become so heavy that mechanical devices such as forklift trucks are necessary for loading and unloading the heavy pallets. A forklift is a self propelled mechanical device that is built to lift and move heavy loads into a position where they can be loaded. Such devices are also used for unloading.

In Alamo Express, Inc. v. Brown Express, Tex.Civ.App., 234 S.W.2d 62, writ refused, n. r. e. the court held that in arriving at the construction of a certificate, the application for such certificate as well as the order of the Commission must be taken into consideration. This Court so held in Railroad Commission of Texas v. Trinity Houston Truck Line, Tex.Civ.App., 86 S.W. 2d 817.

Part of the application of Bilbo for his original authority is as follows:

"* * * Applicant proposes to haul only heavy building materials such as may not ordinarily be transported by common carrier truck lines because special equipment is required.

"* * * the applicant proposes here to haul only heavy materials and supplies for building and construction contractors such as may not ordinarily be handled by the regular general commodity common carrier because of the inadequacy and insufficiency of the regular common carrier equipment, and materials and supplies as would ordinarily require special equipment. * *

"The use of any one highway would be negligible because your applicant would only serve the various contractors of the state to points of construction * * *"

The pertinent parts of the order of the Railroad Commission in Docket No. 2275, dated September 27, 1939, is as follows:

"APPLICATION OF V. C. BILBO FOR A CERTIFICATE TO OPERATE A COMMON CARRIER SERVICE LIMITED TO TRANSPORTING HEAVY BUILDING MATERIALS AND SUPPLIES, ONLY, WHICH REQUIRE SPECIAL EQUIPMENT AND CAN NOT ORDINARILY BE TRANSPORTED BY COMMON CARRIER TRUCK LINES, FOR BOTH HIGHWAY AND BUILDING CONSTRUCTION CONTRACTORS OVER ANY HIGHWAY WITHIN THE STATE OF TEXAS TO POINTS OF USE OR CONSUMPTION ON IRREGULAR SCHEDULES.

*    *    *    *    *    *

"THE COMMISSION FINDS from the evidence that the applicant proposes to render a limited common carrier service only, limiting his transportation to the movement of heavy machinery and building materials for construction contractors, such machinery and materials being of such type and nature which may not ordinarily be transported by common carrier truck lines and which by their size and character ordinarily require special equipment. * * *

*    *    *    *    *    *

"THE COMMISSION FURTHER FINDS THAT building contractors on large construction work, including highways and large building construction, use very heavy machinery and building materials much of which can not be dismantled; that in practically every case where machinery and materials move to the place of construction that some portion of the movement of the said machinery must be accomplished by the use of motor vehicle; that with existing transportation facilities such heavy machinery as contemplated to be used in construction work is moved to the place of construction by what is termed as 'walking it' or moving it under its own power which is slow and inexpeditious. This involves movement over highways whereby such machinery is moved on rolling chains with cleats which are very damaging to the highways.

*    *    *    *    *    *

"THE COMMISSION FURTHER FINDS that a large percentage of such movement would require special permit to be issued by the State Highway Department under other laws * * *"

Following such findings the Commission ordered:

"ORDERED BY THE RAILROAD COMMISSION OF TEXAS that the application of V. C. Bilbo for a certificate authorizing the operation of a limited common carrier motor carrier service, limited to the transportation of heavy building materials, machinery and supplies, and using in said opera-

tion nine trucks, be and the same is hereby granted."

Limited Common Carrier Motor Carrier's Permanent Certificate of Convenience and Necessity No. 3047, dated January 2, 1940, contained the following language.

"TO TRANSPORT HEAVY BUILDING MATERIALS, MACHINERY AND SUPPLIES, using in said operation NINE TRUCKS."

Said Limited Common Carrier Certificate No. 3047 was reissued April 13, 1961, pursuant to application and order, to reflect certain authority to transport agricultural products in interstate commerce. As reissued, said certificate, as here pertinent, contains the following language:

"TO TRANSPORT: HEAVY BUILDING MATERIALS, MACHINERY AND SUPPLIES between all points in Texas."

It is a matter of common knowledge that the motor transportation industry as a whole is highly competitive in nature. This fact was recognized by the Legislature of Texas when it enacted the Motor Carrier Act in 1929. The rights to use certain routes and the right to carry certain commodities to various points in this State, as well as in interstate commerce, along these routes are highly regulated and policed by the various agencies responsible therefor in deference to the public weal.

When Bilbo was granted the certificate in question in 1940, the above mentioned regulation of common carriers by the Railroad Commission was well defined and the commodities that these common carriers were authorized to carry were well defined. To allow the construction given Bilbo's certificate by the Trial Court with respect to the palletized items would, in effect, with the exception hereinafter pointed out, invade the field of commodities generally conceded to the common carriers. Such an interpretation not only puts the above mentioned language of the application and order to strain but ignores the

traditional commodities that the various classes of carriers are authorized to transport. The greater number of items that the State sought to restrain Bilbo from transporting were commodities transported by common carriers when he first sought the certificate as well as commodities that are presently transported by common carriers under lawful authority. The placing of commodities on pallets and strapping them together as a unit for shipping is relatively a new development in the transportation industry. Such method was not in general use when Bilbo's certificate was first issued in 1940. Such method of packing and shipping is widely used today. If the extent of Bilbo's authority is to be determined by the weight of the building commodity aggrandized on pallets that require a special device for loading and not by looking to the commodity itself, an interpretation would be given to the authority that was not intended by the Commission when the authority was issued and was certainly not so interpreted by the common carriers, there having been no protest to the original application.

■ It is generally conceded that the same rules apply to the construction of orders of an administrative agency as those applied to statutes. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424. In Railroad Commission of Texas v. Texas & New Orleans R. Co., Tex.Civ.App., 42 S.W.2d 1091, writ refused, this Court in a case requiring the construction of a statute used the following language:

"Although the language of a statute is general it may be limited in its operation to cases falling within the mischief intended to be remedied. It is to be presumed that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; or, in other words beyond the immediate scope and object of the statute. In all general matters beyond, the law re-

mains undisturbed. It is in the last degree improbable that the legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give such effect to general words simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they were not really used. It is therefore an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be construed as strictly limited to the immediate objects of the act, and as not altering the general principles of the law."

The immediate object of Bilbo's certificate was to give him authority to transport only heavy building material and supplies "such as may not ordinarily be transported by common carrier truck lines because special equipment is required." In the application we find this language "* * * the applicant proposes here to haul only heavy materials and supplies for building and construction contractors such as may not ordinarily be handled by the regular general commodity common carrier because of the inadequacy and insufficiency of the regular common carrier equipment, and materials and supplies as would ordinarily require special equipment * * *" This wording was incorporated in the caption as well as the body of the Commissions' order. The general tenor of "the mischief to be remedied" was not to allow Bilbo, in effect, a "flexible" common carrier's permit where the building trade was involved but to allow him the authority to haul heavy building material, heavy machinery and heavy supplies over irregular routes and, by so doing, filling a gap in the services rendered by the common carriers. For a construction similar to that we have given the word "heavy" as a modifier of each of the words "building materials, machinery and supplies." See Pierce

Auto Freight Lines, Inc. v. R. N. B. Converse d/b/a Converse Trucking Service, 54 M.C.C. 447 (Div. 5, 1952); Converse v. United States, D.C., 109 F.Supp. 807.

In W. J. Dillner Transfer Company—Investigation of Operations, 79 M.C.C. 335, the Interstate Commerce Commission considered whether the bundling, aggregating or palletizing of iron and steel articles and fire bricks so changed the commodities as to render them subject to transportation by a carrier authorized to transport "commodities which because of their weight and size require special equipment" when such aggregated commodities were loaded on flat-bed vehicles by use of lifting devices. The evidence showed that Dillner was transporting bundles of iron and steel articles which, in the aggregate, weighed between 2,000 and 15,000 pounds, and firebrick on wooden pallets, which, following palletization, weighed between 2,800 and 3,500 pounds. The I. C. C. found that the bundles, unitized and palletized units did not come within Dillner's authority. The I. C. C. stated:

"In bundling, aggregating, or palletizing, it should be the general rule of construction (1) that the individual 'commodity itself' is the controlling consideration as respect's a carrier's authority; (2) that the limited exception which the Black case, 64 M.C.C. 443, represents, where commodities are bundled for protection or as otherwise required by their 'inherent nature' must be maintained within its strictest limits; (3) that the minimum bundle which is required by the 'inherent nature' of the commodity is the size or type of bundle which must be considered in any determination whether necessity exists for the use of special equipment; and (4) that in order reasonably to maintain these limits it shall be presumed, in the absence of a sound basis for concluding to the contrary, that commodities tendered to carrier, in bundles or aggregations, are within the general rule and not within the limited

exception thereto." Affirmed W. J. Dillner Transfer Co. v. I. C. C., D.C., 193 F.Supp. 823; affirmed per curiam 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16 (1961).

We hold that in determining the authority of a carrier, the commodities themselves are looked to and not the weight of the pallets. There is nothing to prevent the common carrier from using mechanical lifts or flat-bed trucks, consequently nothing to prevent them from carrying traditional commodities palletized for convenience or economy and for the protection of the commodity itself.

We also hold that while Bilbo's authority contemplates special equipment for loading and unloading, special lifting equipment such as forklifts and similar lifting devices satisfy this requirement so long as the commodity itself comes within the purview of his authority.

In light of the recent development of palletizing commodities into loads that cannot be handled manually and in view of the fact the common carriers are lawfully handling such loads even though flat-bed trucks and lifting equipment are necessary, the exception allowed the heavy hauler under his limited common carrier certificate by the Interstate Commerce Commission in the Black case cited above is a reasonable one and a logical one. We quote from the opinion:

"With respect to the bundles of sheet metal here involved, we think bundling was required by the inherent nature of the commodity. Single sheets are unstable, subject to bending or other damage, and having in mind their size, awkward or impossible to handle without bundling. In the case of sheet tinplate, at least, bundling would also seem to be required as protection against damage to the coated surface of the sheets, and the same is true, to a lesser extent, with respect to the rather soft aluminum sheets. Examination of the facts concerning this method of handling convinces us that the bundling is done, not merely for economy and efficiency, but because it is required by the inherent nature of the commodity. When bundled, the commodities are too heavy to handle without the use of special equipment, and we therefore conclude that these four shipments were within respondent's authority to transport 'articles requiring special equipment.' "

We hold that where palletizing is required for building material or supplies by the inherent nature of the commodity such as is required for protection against damage, that when special equipment is needed for the loading and unloading of such commodity, it is within the purview of Bilbo's certificate. We hold that the abovementioned authority is not an extension of the original authority but falls within the original authority granted and is in line with this Court's holding in York Transport Company v. Railroad Commission, Tex.Civ.App., 315 S.W.2d 313, writ refused, n. r. e.

In the York Transport Co. case the court held that certain derivatives of "petroleum products," though not in existence at the time the certificate authorizing transportation of "petroleum products" was granted, came under that authority. Though palletizing was not contemplated when Bilbo's certificate was issued, commodities palletized because of their inherent nature and not merely for convenience or economy, would more naturally fall within that group transported by the heavy hauler than by the common carrier. Bilbo has cited the York Transport Company case for authority that a certificate can "grow." We do not so construe it.

Appellee plead in his cross action that "* * * employees and representatives of the cross-defendant, Department of Public Safety of the State of Texas, are attempting herein to substitute their judg-

ment for that of the shippers and receivers of freight and for the judgment of the cross-plaintiff herein on what type of commodities may be transported under such certificate * * *" In his judgment the Trial Court found that when the "trade or industry" considers traffic it tenders to be "heavy building materials and supplies," then such consideration renders such traffic subject to transportation by Bilbo. We must overrule this contention in the light of our decision in State v. Refrigerated Transport, Inc., Tex.Civ.App., 348 S.W.2d 241, error refused, n. r. e. In that case we held that to apply a test of whether or not a shipper requires the service not otherwise authorized is to add to the language of and enlarge the certificate, and would permit the certificate holder to haul almost any shipment tendered.

■ We hold that Bilbo was lacking in authority to transport any of the items mentioned in the State's petition with the exception of rolls of prepared roofing on 2000 lb. pallets, rolls of building paper on 2000 lb. pallets, bundles of asphalt shingles on 2000 lb. pallets, rolls of asphalt siding on 2000 lb. pallets, such being commodities that require palletizing for protection by their inherent nature. We reverse and render the judgment of the Trial Court wherein it conflicts with this holding.

We affirm the Trial Court's holding that incidental supplies or accessories to heavy building materials tendered to the carrier as integral parts of such shipments of heavy building material even though such incidental supplies or accessories, standing alone, could not be considered as heavy building material. This is in line with the holdings of the Interstate Commerce Commission. See P. Z. Zimmerman Company-Interpretation, 14 F.C.C. paragraph 34856; East Texas Motor Freight Lines-Extension, 10 F.C.C., Par. 33,112. Under our holding here, possibly the boxes of asbestos siding fixtures mentioned in the State's petition were legal cargo.

We affirm the court's finding that Bilbo is authorized to carry single pieces of various building materials of such size or weight that mechanical devices are required in loading or unloading them to or from the transporting vehicle.

We affirm part of the judgment of the Trial Court as indicated and reverse and render the parts indicated.

Affirmed in Part and in Part Reversed and Rendered.