DIVERSIFIED CHEMICALS AND PROPELLANTS COMPANY, Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION et al., Defendants.

No. 76 C 1658.

United States District Court, N. D. Illinois, E. D.

May 12, 1977.

**860**

Irving H. Goldberg, Robert F. Hanley, Rodney D. Joslin, and Laura A. Kaster, Jenner & Block, Chicago, Ill., for plaintiff.

John F. Lillard, U. S. Dept. of Justice, Civil Div., Washington, D. C., for defendants.

MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Diversified Chemicals and Propellants Company is a chemical distributor and marketer. Part of its business includes the sale of chemical hydrocarbon propellants used as a substitute for fluorocarbon propellants in aerosol cans. Diversified purchases highly refined chemical quality isobutane, propane and butane and further purifies and blends these products for sale as chemical propellants.

This controversy arose over the statutory authority of the Federal Energy Administration to regulate these aerosol propellants. The statutory scheme here involved is found in the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq., and the Federal Energy Administration Act, 15 U.S.C. § 761 et seq.

In December, 1975, plaintiff was notified that its products might be covered products subject to FEA price regulations. Plaintiff then requested and received an FEA interpretation. This interpretation was issued on February 20, 1976. It found that the propellants sold by Diversified were within the terms of the statutes and FEA regulations and were, therefore, subject to price regulations.

Within the 30-day period for appeal within the FEA, Diversified filed an appeal of interpretation with the Office of Exceptions and Appeals. This appeal was dismissed because of Diversified's failure to comply with 10 C.F.R. § 205.104(a) which required that Diversified notify its customers of the appeal. Diversified claimed that this requirement was impracticable, detrimental to Diversified's business and not of aid in determining the purely legal question before the agency. Diversified sought a waiver of the notice requirement. This request was denied and the appeal was dismissed without prejudice.

On April 23, 1976, a notice of probable violation was issued to Diversified. Diversified replied to this on April 30, denying all violations.

This action was brought by Diversified on May 3, 1976. It seeks a judicial declaration that its products are not covered products within the statutory authority granted to the FEA by the FEAA and the EPAA. The complaint, as amended October 12, 1976, petitions the court to enjoin any further FEA administrative proceedings which might lead to the issuance of a remedial order. Plaintiff also seeks review of an administrative interpretation and the regulations governing administrative appeals.

Presently before the court is the Government's motion for judgment on the pleadings. The Government advances the arguments that (1) this case is not yet ripe for adjudication; and (2) plaintiff has failed to exhaust its administrative remedies.

### Interpretation

As a prelude to the court's discussion of the issues involving the FEA interpretation, a brief review of the relevant regulations is necessary. To begin with, interpretations are discussed in, and governed by 10 C.F.R. § 205.80 et seq. Section 205.86 deals with appeal from an interpretation. It states in relevant part that:

"There has not been an exhaustion of administrative remedies until an appeal has been filed pursuant to Subpart H of this part and the appellate proceeding is completed by the issuance of an order granting or denying the appeal."

Subpart H referred to in this passage governs appeal. It is found at 10 C.F.R. § 205.-100 et seq. The notice provision at issue in this suit is found in § 205.104(a). This section states in relevant part that:

"The appellant shall send by United States mail a copy of the appeal and any subsequent amendments or other documents relating to the appeal, or a copy from which confidential information has been deleted in accordance with § 205.-09(f), to each person who is reasonably ascertainable by the appellant as a person who will be aggrieved by the FEA action sought, including those who participated in the prior proceeding."

Section 205.106(a)(2) provides that "[i]f the appellant fails to provide the notice required by § 205.104, the FEA may dismiss the appeal without prejudice."

With the above in mind, the court can now proceed to a discussion of defendant's ripeness argument. The Government argues that the case and controversy requirement of Article III of the United States Constitution requires that issues presented in a judicial forum be ripe for adjudication. The purposes behind this requirement, especially in a suit against a Government agency, are set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967):

"Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

The doctrine of ripeness is discussed in some detail in *Abbott Laboratories v. Gardner, supra,* as well as in its two companion cases, *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), and *Gardner v. Toilet Goods Association, Inc.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). An examination of these cases in some detail is warranted.

*Abbott Laboratories* involved pre-enforcement review of regulations promulgated by the Commissioner of Food and Drugs. These regulations required the inclusion of certain information on all labels and printed materials relating to prescription drugs. The Court set forth two factors which are involved in a determination of the ripeness question. The first of these is the fitness of the issues for judicial decision and the second is the hardship to the parties of withholding judicial consideration. In weighing the first factor, the Court began by pointing out that the issue tendered was purely a legal one. It went on to endorse a

pragmatic approach to answering the question of whether final agency action had occurred. The regulations at issue were promulgated in a formal manner and were effective upon publication. They had the status of law and violations of them carried heavy criminal and civil sanctions. As to the hardship to the parties, the Court pointed out that the regulations had a direct impact on the day-to-day business of all prescription drug companies. The choice with which the companies were confronted was as simple as it was unpleasant: comply immediately or risk prosecution. It was also found relevant that the drug industry was a sensitive one in which public confidence was an extremely important factor. This added to the undesirability of testing the regulation by subjection to prosecution. In this context, the Court found that the ripeness requirement was satisfied.

*Toilet Goods* also was a pre-enforcement challenge to regulations promulgated by the Commissioner of Food and Drugs. In this case, the Court found that the first requirement, that the issues tendered be appropriate for judicial determination, was not satisfied. This finding was made despite the fact that a purely legal question was presented. It was concluded that the relevant factors in determining the legality of the particular regulations challenged in that case would be brought out more clearly if a specific application of the regulation were before the Court. The impact on the parties factor led the Court in a similar direction. Here the impact of the administrative regulations could not be said to be felt immediately in the day-to-day business activities of those subject to it. The primary conduct of the plaintiffs was not found to be affected by the regulation. A refusal to comply would, in this particular case, lead to no irreversible damage. Accordingly, in *Toilet Goods*, the Court found that the ripeness requirement was not satisfied.

The third case, *Gardner*, involved still other regulations promulgated by the Commissioner of Food and Drugs. In this case, the challenge to the regulations was found to be ripe for judicial review. The Court found that the consideration of underlying legal issues relating to the legality of the regulations challenged in this suit would not be facilitated if raised in the context of a specific attempt to enforce the regulations. The other factor was found to cut in the same direction. The regulations were self-executing and they had an immediate and substantial impact upon the respondents.

Three cases which were cited by the Court in the *Abbott* decision in reference to the flexible approach to the question of finality are cited to this court by the plaintiff. These cases are *Frozen Food Express v. United States*, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); and *Columbia Broadcasting System v. United States*, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). The court has carefully considered these cases. All of them can be readily reconciled with the holding and reasoning of *Abbott Laboratories* and its companion cases. In all of these cases, the challenged regulations did not require a specific factual context to facilitate judicial review of them. Also all of them involved situations where immediate harm was found to be caused by the regulations even in the absence of further enforcement.

The parties to this case have cited one more case to this court which is relevant to the decision of this matter. This is *Bethlehem Steel Corporation v. United States Environmental Protection Agency*, 536 F.2d 156 (7th Cir. 1976). This case involved a challenge to the designation by the EPA of certain areas in Indiana as "air quality maintenance areas". The court there found that the matter was not yet ripe for judicial review. This dismissal was in the face of claims by steel and power companies of uncertainty in their business and capital planning. The court found that these claims were "vague and speculative" and that:

"They do not involve injuries on the order of the concrete immediate business costs

which the Supreme Court relied on to find a pre-enforcement challenge to administrative action ripe for review in *Abbott Laboratories, supra,* and *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In those cases the petitioners were faced with the dilemma of either expending considerable sums of money to comply with the administrative orders affecting them or facing serious penalties for noncompliance accompanied by the stigma of transgressing the law which could affect their goodwill. The petitioners in the instant case are not faced with such a dilemma. They need not expend any funds at this time since there is no administrative directive to which they must comply, nor, of course, do they face any sanctions for noncompliance.

"Furthermore, the hardship alleged here does not have the 'direct effect on the day-to-day business' of the petitioners which the Supreme Court found present in *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517, 18 L.Ed.2d at 693." 536 F.2d at 162–63.

In view of the above authority, this court must now face the task of determining whether or not the present controversy is ripe for adjudication. The starting point and framework for this analysis must, of course, be the test set forth in *Abbott Laboratories.* The first issue to be considered, therefore, is the fitness of the issues present in the instant case for judicial decision. Plaintiff advances the argument that, as in *Abbott Laboratories* itself, the instant case presents only a purely legal issue for adjudication. This issue is whether plaintiff's products are covered by pricing regulations adopted to govern the petroleum industry. It also suggests that this case is similar to *Frozen Food Express v. United States, supra,* in that both involve a determination of whether certain items are exempt from regulation. The fact that only a purely legal issue may be presented for decision is, of course, not conclusive. This is amply demonstrated by the *Toilet Goods* case where ripeness was found to be lacking despite this fact.

The question to be asked under the rationale of the *Abbott Laboratories* analysis boils down to whether concrete legal issues are presented by the case in its present posture. Thus the court must ultimately determine whether further agency action would result in a more clearly developed presentation of the relevant issues to the court. Also, the pragmatic reading of the finality requirement does not negate this requirement entirely. A certain degree of finality is a prerequisite to judicial review of administrative action. The court believes that the closest case to the instant one is the *Bethlehem Steel* case. There the court, in passing on this facet of the *Abbott Laboratories* analysis, stated that

"the issues here are fit for judicial review in the sense that they present concrete legal questions, but are not fit for judicial review in the sense that the actions challenged are part of a continuing agency decision-making process which has not yet resulted in an order requiring compliance by the petitioners." 536 F.2d at 161.

The second question which must be answered under *Abbott Laboratories* is the hardship the parties may suffer by withholding judicial consideration. This question is really the key issue in this case. Plaintiff claims that it is faced with the dilemma of suffering economic loss by complying with the agency interpretation or suffering great harm to its business relations by risking agency enforcement. *Abbott Laboratories,* in which sufficient harm was found to warrant a finding that the ripeness requirement was satisfied, involved a choice between an exposure to criminal or civil liability and an immediate and far-reaching effect on the primary business activities of the regulated party. The sensitivity of the drug industry to adverse publicity was a factor which further aggravated this Draconian choice. This type of harm is a far cry from that faced by the plaintiffs here. The most painless option available to the plaintiff is to do nothing. Until the FEA seeks to enforce an order, the plaintiff is not subject to the possibility

of actual pecuniary liability.[1] Thus the plaintiff is not now experiencing any cognizable hardship as a result of the interpretation. Here, as in *Bethlehem Steel*, plaintiff has not alleged direct and immediate harm as a result of the interpretation.

It will best serve the important ends of the federal regulatory scheme involved here as well as judicial and administrative efficiency if the plaintiff awaits further administrative action against it or avails itself of the further administrative remedies available to it[2] before involving the courts in this complex area. Accordingly, as to its challenge of the FEA interpretation, this court finds that the ripeness requirement has not been met and the action must therefore be dismissed. In view of this, it is not necessary for this court to reach the other grounds advanced by the Government in support of its motion for judgment on the pleadings.

### Notice of Probable Violation

Plaintiff also challenges FEA's issuance of a notice of probable violation. The issuance of such a notice is authorized by 10 C.F.R. § 205.191. The next step provided for by the regulations after a notice of probable violation has issued is a remedial order. 10 C.F.R. § 205.192.

*West Penn Power Company v. Train*, 522 F.2d 302 (3d Cir. 1975), involved the issuance of a notice of probable violation under the Clean Air Act, 42 U.S.C. § 1857 *et seq.* This notice was issued by the EPA. The court there held that a notice of probable violation was not reviewable. Much of what was said in that admittedly different context is applicable to the situation before this court. The court there first pointed out that the notice of violation did not have any independent coercive effect or force of law. It then stated that

"the only effect of a notice of violation is to make the recipient aware that the 'definitive regulations are not being met

and to trigger the statutory mechanism for informal accommodation which precedes any formal enforcement measures." 522 F.2d at 311.

An exhaustive review of the court's analysis of ripeness above is not necessary in connection with the notice of probable violation. It is evident that what was said in regard to the agency interpretation is equally applicable here. Once again here, the plaintiff faces no immediate harm of any kind since administrative steps remain to be taken before the Government's coercive powers are brought to bear. Once again, this court must conclude that the ripeness requirement as set forth in *Abbott Laboratories* has not yet been satisfied. In view of this, plaintiff's action as to the notice of probable violation must also be dismissed.

### Conclusion

Defendant's motion for judgment on the pleadings is granted. Plaintiff's action is hereby dismissed.

---

1. Prior to enforcement of an order, an order would first have to be issued, of course, and the issuance would be subject to appeal.

2. Plaintiff has the option of appealing the interpretation if it first complies with the applicable notice requirement.